1
2

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

3

4      **ELADIO RIVERA ROSSY,**

5          **Plaintiffs,**

6              **v.**                                    **Civil No. 08-2167 (GAG)(CVR)**

7      **PUERTO RICO POLICE**
       **DEPARTMENT, et al.,**

8          **Defendants.**

9

10

11                          **OPINION AND ORDER**

12

13          Plaintiff Eladio Rivera Rossy ("Rivera-Rossy") filed this action against his employer, the

14   Puerto Rico Police Department ("PRPD"), Superintendents Víctor Rivera González, Agustín

15   Cartagena, and Pedro Toledo,  Sargeant Juan Martínez Méndez, Captain Miguel Martínez Méndez,

16   and Coronel Fernando L. Correa Suárez, in both their personal and official capacities, alleging

17   retaliation, sexual harrassment, and hostile work environment.  Defendant PRPD moves to partially

18   dismiss this action for failure to state a claim upon which relief can be granted and lack of

19   jurisdiction.   After reviewing the pleadings and pertinent law, the court **GRANTS** in part and

20   **DENIES** in part defendant PRPD's motion to dismiss (Docket No. 16).

21   **I.      Standard of Review**

22          Under Rules 12(b)(1) and 12(b)(6), a defendant may move to dismiss an action against him

23   for lack of federal subject-matter jurisdiction or for failure to state a claim upon which relief can be

24   granted.  See Fed. R. Civ. P. 12(b)(1); Fed. R. Civ. P. 12(b)(6).  When considering a motion to

25   dismiss, the court must decide whether the complaint alleges enough facts to "raise a right to relief

26   above the speculative level." See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1965

27   (2007).  The court accepts as true all well-pleaded facts and draws all reasonable inferences in the

28   plaintiff's favor. See id.; Parker v. Hurley, 514 F.3d 87, 90 (1st Cir. 2008).

**Civil No. 08-2167 (GAG)(CVR)**                    2

1    **II.      Relevant Background as Alleged in the Amended Complaint**

2           At all times pertinent to this complaint Plaintiff Rivera-Rossy was a homicide agent for the

3    Criminal Investigation Corps ("CIC") of the PRPD, Utuado Division.  On July 9, 2003, Sargeant

4    Juan Martínez, who was in charge of the Utuado CIC Homicide Divison, asked Rivera-Rossy why

5    he was with Agent Marilda Blanco Rivera ("Agent Blanco").  The Sargeant told Rivera-Rossy that

6    he was no one's mattress ("colchón").  Rivera-Rossy asked Sargeant Martínez to clarify what he

7    meant and told him that Agent Blanco was simply a fellow officer, emphasizing that he also knew

8    her husband, another fellow police officer.  Rivera-Rossy reminded the Sargeant that this was not

9    the first time he made coments about Agent Blanco.  Sargeant Martínez had previously told Rivera-

10   Rossy that Agent Blanco had been dating Wilfredo, Rivera-Rossy's brother, and that she had

11   subsequently dated another agent by the name of Feliciano.  That morning, Agent Blanco called in

12   sick and plaintiff told her what Sargeant Martínez had said about her.

13          On July 15, 2003, Agent Blanco met with Captain Miguel Martínez, who was Sargeant Juan

14   Martínez's brother and Agent Blanco and Rivera-Rossy's direct supervisor.  That same day, Sargeant

15   Martínez called plaintiff and asked him what he had told Agent Blanco about their previous

16   conversation.  Rivera-Rossy said that he had told Agent Blanco exactly what the Sargeant had

17   commented about her amorous relationships.  Rivera-Rossy also told the Sargeant that what he had

18   said was disrespectful and warned him that he would not allow those kinds of false rumors to be

19   spread about Agent Blanco, his brother, or himself.  The Sargeant replied that Rivera-Rossy was

20   nobody's mattress, at which point Rivera-Rossy left the office very upset.  As he was leaving,

21   Sargeant Martínez stated that he would have whoever harmed him kicked out of the Division.

22   Rivera-Rossy understood this to mean Agent Blanco and himself.  Sargeant Martínez further stated

23   that the matter was to be dealt with "from man to man."  Rivera-Rossy perceived this as a threat.

24          On July 23, 2003, Agent Rivera-Rossy was in a meeting with Captain Miguel Martínez about

25   a murder case in regards to which Sargeant Martínez had been attempting to prevent Agent Blanco

26   from testifying.  Captain Martínez asked Rivera-Rossy what was happening with Agent Blanco.

27   Rivera-Rossy told him what the Sargeant had said about Agent Blanco's amorous relationships.

28   Captain Martínez stated that he would not butt into anyone's life. Rivera-Rossy got upset at this, and

**Civil No. 08-2167 (GAG)(CVR)**                3

told the Captain that what his brother had said was false.  Rivera-Rossy also informed the Captain that Sargeant Martínez had threaten to remove Agents Blanco and Rivera-Rossy from Homicide and the CIC if they complained about his behavior.

On August 28, 2003, Agent Blanco filed an administrative complaint against Sargeant Martínez alleging sexual harassment.  That same day, Sargeant Martínez met with a woman by the name of Ramos, who had been an interested party in a 1998 case that was investigated by Rivera-Rossy regarding a possible kidnapping.  Sargeant Martínez gave a copy of the case file to Mrs. Ramos and told her that if she was not in agreement with the result of Rivera-Rossy's investigation she should file an administrative complaint against the agent, so that Sargeant Martínez could re-investigate the matter.  On September 3, 2003, Sargeant Juan Martínez filed a complaint against Rivera-Rossy in relation to the kidnapping investigation.  When Rivera-Rossy was exonerated, Captain Miguel Martínez told Mrs. Ramos that she should appeal.  The case was appealed and is pending before the CIPA ("Comisión de Investigación, Procesamiento y Apelación").

On December 24, 2003, Sargeant Martínez and Captain Miguel Martínez filed a complaint against Rivera-Rossy for improper conduct.  They alleged that Rivera-Rossy was not perfoming his duties, that he was distracted, and that "he had problems."  Agent Rivera-Rossy was exonerated.  On December 30, 2003, Sargeant Martínez submitted Rivera-Rossy's evaluation with a grade assessment of 55%.  On January 20, 2004, Rivera-Rossy sent Sargeant Martínez a letter asking for reconsideration, with his time sheets, hour records, and personell file.  Lieutenant Humberto Angleró met with both Rivera-Rossy and Sargeant Martínez to discuss the negative evaluation.  After this meeting, Sargeant Martínez continued the same pattern of harassment against Rivera-Rossy.

Rivera-Rossy filed a labor harassment complaint against Sargeant Martínez on February 6, 2004.  Subsequently, Sargeant Martínez was removed from Rivera-Rossy's unit and was sent to the Angeles Precinct in Utuado.  Afterwards, Sargeant Martínez filed yet another complaint against Rivera-Rossy, indicating that plaintiff had been investigating him during working hours using official vehicles.  Sargeant Martínez continued to exhibit hostile behavior toward Rivera-Rossy.  Plaintiff perceived such harassment as retaliation for having testified on behalf of Agent Blanco in the administrative complaint that she had filed against Sergeant Martínez.

**Civil No. 08-2167 (GAG)(CVR)**                    4

1    On or about the end of August 2004, a Sargeant by the name of Pérez assigned Agent Rivera-

2  Rossy to two murder cases.  Rivera-Rossy was taken off one the cases by order of Captain Miguel

3  Martínez and was transfered to the Special Arrests Division.  Two days later, plaintiff was transfered

4  to the Property Division.  Rivera-Rossy perceived this as a measure by Captain Martínez to take

5  away his investigative responsabilities and functions.  Rivera-Rossy's removal from such functions

6  created deficiencies in his evaluations and cost him prizes and promotions.  Rivera-Rossy was

7  subsequently transfered out of the Homicide Division.  As a result, Superintendent Agustín

8  Cartagena ordered a meeting between Commander Reinaldo Bermúdez and Rivera-Rossy regarding

9  the reassignment of one of Rivera-Rossy's murder cases.  Meanwhile, plaintiff had filed another

10  administrative complaint against Captain Miguel Martínez for retaliation.  Subsequently, Rivera-

11  Rossy was reinstated to the Homicide Division and assigned to all his former cases.  However, on

12  September 20, 2004 Captain Martínez filed another complaint against Rivera-Rossy and prevented

13  him from attending the Criminal Investigations Academy, though agents with less experience from

14  the same division were allowed to attend.  Rivera-Rossy complained about this to others within his

15  division, who stated that Captain Martínez did not want Agent Rivera-Rossy to attend the courses.

16    In August 2005, the Homicide Division was split in two: Homicide I, which would deal with

17  murders and assaults, and Homicide II, which would deal with missing persons and robberies.

18  Though plaintiff was well-qualified to remain in the murders and asaults division, he was assigned

19  to missing persons and robberies.  During the last week of August, after Captain Martínez ordered

20  that Rivera-Rossy be relocated to a different office, plaintiff requested a meeting with Colonel

21  Caldero.  After that meeting, on September 29, 2005, Captain Miguel Martínez was ordered by the

22  Colonel to return Rivera-Rossy to the Homicide Division and to dismantle the separate units,

23  Homicide I and II.  Others in the unit had perceived that the separate divisions were created in order

24  to remove Rivera-Rossy from homicide investigations.

25    On November 28, 2005, Commander Ortíz Montañés met with plaintiff at the Utuado

26  Precinct to see if he would withdraw his complaint against Captain Martínez.  After Rivera-Rossy

27  explained the situation, the Commander told him that he would refer the matter to the CIPA.  On

28  November 29, 2005, Captain Martínez filed another administrative complaint against plaintiff

**Civil No. 08-2167 (GAG)(CVR)**                5

alleging the latter had disobeyed his orders, with a false statement by Sargeant Martínez to support his claim.

On December 12, 2005, Rivera-Rossy filed charges of discrimination against defendants herein with the Equal Employment Opportunity Commission ("EEOC"). The EEOC attempted conciliation as provided for in Title VII. On July 9, 2008, the EEOC directed a right-to-sue letter to plaintiff, which was received by him on or about July 15, 2008. Plaintiff filed the original complaint in this case on October 9, 2008 (Docket No. 1) and an amended complaint on January 29, 2009 (Docket No. 6). Plaintiff has filed suit pursuant to 42 U.S.C. §§ 1983 & 1985, as well as under Title VII, 42 U.S.C. § 2000e et seq. Plaintiff also filed supplemental state law claims under Articles 1802 & 1803 of the Puerto Rico Civil Code, P.R. Laws Ann. tit. 21, §§ 5141 & 5142; Law 17, P.R. Laws Ann., tit. 29, § 155 et seq.; Law 69, P.R. Laws Ann., tit 29, §1321 et. seq.; the Puerto Rico Whistleblowers Protection Act, P.R. Laws Ann., tit. 1, § 601 et seq.; and Law 100, P.R. Laws Ann., tit. 29, § 146 et seq.

On March 26, 2009, defendant PRPD presented a motion to partially dismiss for lack of jurisdiction and failure to state a claim (Docket No. 16). Plaintiff has not opposed defendant PRPD's motion to dismiss, as the deadline for filing came and went on April 13, 2009 without action by plaintiff. Co-defendant Victor Rivera-González moved to join PRPD's motion to partially dismiss on April 15, 2009, which request was granted (Docket Nos. 23 & 24).

**III.    Discussion**

**A.    Section 1983 Claim**

Defendant argues that plaintiff's 42 U.S.C. § 1983 claim should be dismissed because it is barred by the Eleventh Amendment. The court agrees in part. The claims for damages against police-defendants are not barred by the Eleventh Amendment insofar as they are asserted against the defendants in their personal capacity. These defendants may also be sued in their official capacity for purposes of declaratory and injunctive relief. See Nieves-Marquez v. Puerto Rico, 353 F.3d 108, 114 n.1 (1st Cir. 2003). On the other hand, the Puerto Rico Police Department is immune from suit under the Eleventh Amendment even for claims for declaratory and injunctive relief. See Nieves-Marquez, 353 F.3d at 114 n.1 ("Under Ex Parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed.

**Civil No. 08-2167 (GAG)(CVR)**                                       6

714 (1908), the defendant state officers were proper defendants for prospective injunctive relief, but

the Commonwealth or the Department [. . .] were not."). Thus, the court **GRANTS** in part and

**DENIES** in part defendant PRPD's motion to dismiss plaintiff's Section 1983 claim on Eleventh

Amendment grounds. All claims for damages and declaratory or injunctive relief against the PRPD

shall be dismissed with prejudice, as well as all claims for damages against police-defendants, in

their official capacity. Plaintiff may, however, continue to pursue his official-capacity claims against

police-defendants for injunctive or declaratory relief, as well as all claims against such defendants

in their personal capacity.[1]

> **B.      Section 1985 Claim**

Plaintiff Rivera-Rossy alleges that Colonel Fernando Correa's failure, as Assitant

Superintendant of CIC for the PRPD, to resolve his complaints and his willful blindness with regards

to the acts of persecution and retaliation taken by co-defendants Juan Martínez and Miguel Martínez

constitute a conspiracy under color of law to molest, hinder, interrupt, and impede agent Rivera-

Rossy in the discharge of his duties as a PRPD agent, in violation of 42 U.S.C. § 1985(1).[2] In its

---

[1] The court is doubtful that any claims against official defendants for prospective and injunctive relief can proceed under Section 1983. This is so because, this being a Title VII action, that statute should provide the exclusive remedy. See Castro v. United States, 584 F. Supp. 252 (D.P.R. 1984) (citing Brown v. G.S.A., 425 U.S. 820 (1976)); see also Day v. Wayne County Board of Auditors, 749 F.2d 1199, 1204-05 (6th Cir. 1984) (holding that section 1983 cannot be used to enforce Title VII because Title VII has its own remedial enforcement mechanism); cf. Izquierdo Prieto v. Mercado Rosa, 894 F.2d 467, 470 (1st Cir. 1990) (holding that the Age Discrimination in Employment Act and its amendments provide a comprehensive statutory remedy that may not be bypassed through the means of an action under section 1983). In this case, the defendants have not raised this issue and, as such, the court will not *sua sponte* dismiss these claims. However, the court orders plaintiffs to show cause why these claims should not be dismissed, on or before May 8, 2009. The only claims under Section 1983 that would proceed are the claims against defendants in their individual capacities.

[2] Plaintiff has not made clear under which part of Section 1985 he is proceeding. The court concludes that plaintiff's allegations fall under subpart (1) of 42 U.S.C. § 1985, which provides as follows:

> If two or more persons in any State or Territory conspire to prevent, by force,
> intimidation, or threat, any person from accepting or holding any office, trust, or

**Civil No. 08-2167 (GAG)(CVR)**                          7

motion to dismiss, defendant PRPD contends that Section 1985 applies only to federal officials and, therefore, plaintiff, as an agent of the state police, has no standing to raise a claim under the statute. The court agrees.  Though there is no caselaw in the First Circuit on this specific point, other courts have determined that, on its face, Section 1985(1)'s protections "extend exclusively to the benefit of federal officers."  Canlis v. San Joaquin Sheriff's Posse Comitatus, 641 F.2d 711, 717 (9th Cir. 1981) ("There is nothing in the language of the statute nor in the legislative history to support appellants' interpretation that [section] 1985(1) does not apply exclusively to federal officers."); see also Morast v. Lance, 807 F. 2d 926, 929 (11th Cir. 1987)  (citing Kush v. Rutledge, 460 U.S. 719, 724 (1983)) ("The purpose of this section is to proscribe conspiracies that interfere with the performance of official duties by federal officers.").  Moreover, courts have held that non-federal officers, including judges, police officers, and county health board members, are not "federal officers" for the purposes of Section 1985(1).  See, e.g., Canlis, 641 F. 2d at 718 (officers of county sheriff's department lacked standing); Town of Brookline v. Operation Rescue, 762 F. Supp. 1521, 1523 (D. Mass. 1991) (city officials and police officers lacked standing); Baron v. Carson, 410 F. Supp. 299, 300 (N.D. Ill. 1976) (county health board member lacked standing); see also Morast, 807 F. 2d at 929 (holding that officer at a national bank lacked standing under Section 1985 even though the bank was heavily regulated by the federal government); but cf. Lewis v. News-Press & Gazette, Co., 782 F. Supp. 1338, 1342-43 (W.D.Mo. 1992) (concluding that state court judge was a "federal officer" for the purposes of Section 1985(1) because he had a quasi-federal role and because the case arose out of his interpretation of federal constitutional law).  Thus, the court concludes that plaintiff is not a federal officer for purposes of Section 1985(1).  Plaintiff is not employed by the federal

---

place of confidence under the United States, or from discharging any duties thereof; or to induce by like means any officer of the United States to leave any State, district, or place, where his duties as an officer are required to be performed, or to injure him in his person or property on account of his lawful discharge of the duties of his office, or while engaged in the lawful discharge thereof, or to injure his property so as to molest, interrupt, hinder, or impede him in the discharge of his official duties; [. . .] the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985 (1).

**Civil No. 08-2167 (GAG)(CVR)**                    8

government, and has not alleged that he is authorized to perform any official federal duties.  The

Court therefore **GRANTS** PRPD's motion to dismiss on this ground and dismisses plaintiff's

Section 1985(1) claim.

### C.      State Law Claims

Defendant argues that plaintiff's state law claims should be dismissed for various reasons:

(1) Law 100, P.R. Laws Ann. tit. 29, § 151, does not apply to governmental entities; (2) Law 426,

P.R. Laws Ann. tit. 1, § 601, does not apply to the facts alleged; (3) Law 17 does not apply to the

facts alleged; and (4) the Puerto Rico Police Department is entitled to sovereign immunity pursuant

to the Eleventh Amendment as to all of the state law claims.

Under Law 100, the term "employer" is defined as: "any natural or artificial person

employing laborers, workers or employees, and the chief, official, manager, officer, managing

partner, administrator, superintendent, foreman, overseer, agent or representative of such natural or

artificial person. It shall include all such agencies or instrumentalities of the Government of Puerto

Rico as may be operating as private businesses or enterprises." P.R. Laws Ann. tit. 29, § 151. "It

is well established, however, that the Puerto Rico Police Department functions as an arm of the

state." Hernandez Payero v. Puerto Rico, 338 F.Supp.2d 279, 282 (D.P.R. 2004) (citing Castro v.

Puerto Rico, 43 F.Supp.2d 186, 190 (D.P.R.1999)).  "Because the Puerto Rico Police Department

is an arm of the state and does not function as a business or private entity, Law 100 is not

applicable." See Id..  As Law 100 does not apply to the Puerto Rico Police Department, the police-

defendants cannot be held liable in their official capacities under the same.  See Id. (citing

Arizmendi-Corales, et al. v. Javier Rivera, et al., 2001 WL 1636736, at *1, 2001 U.S. Dist. LEXIS

23339 at *4).  Therefore, the court **GRANTS** defendant's motion to dismiss on this ground.  The

Law 100 claim against the Puerto Rico Police Department and all police-defendants is hereby

dismissed.

As to the claim under Law 426, defendants are correct in their argument that the statute

cannot apply to the facts alleged in the complaint, as it would impermissibly broaden its scope. The

statute's statement of purpose reads as follows:

The purpose of this chapter is to adopt measures for the protection of the rights of

**Civil No. 08-2167 (GAG)(CVR)**                    9

> public employees and officials who disclose information or testify on alleged improper or illegal acts *regarding the use of public property or funds that due to their nature constitute acts of government corruption, or that fall within the ethical conduct regulated by our legal system.*

P.R. Laws Ann. tit. 1, § 601 (emphasis added). The record shows that Rivera-Rossy has only alleged facts related to the discrimination, harassment, and retaliation that he allegedly suffered because he was a witness to acts of sexual harassment. As defendant PRPD points out, "he makes no allegation that he ever witnessed or reported the misuse of public property or funds." Frederique-Alexandre v. Department of Natural and Environmental, 478 F.3d 433, 440 (1st Cir. 2007). Therefore, defendant's motion to dismiss on this ground is **GRANTED**, as plaintiff's claim under Law 426 lacks any factual foundation and, thus, must be dismissed.

The court, however, does not agree with defendant's argument that the claim under Law 17 should be dismissed because the facts alleged in the complaint are not actionable under the statute. Law 17 prohibits sexual harassment in the workplace. See P.R. Laws Ann. tit. 29, § 155. "Puerto Rico's Law 17 defines sex harassment as a type of sex discrimination, and forbids retaliation against persons who 'reject' the employer's sexually discriminatory practices." Rodriguez-Hernandez v. Miranda-Velez, 132 F.3d 848, 854 (1st Cir. 1998) (citations omitted). Law 17 "safeguards individuals against retaliation for affording assistance to persons who seek to mount sexual harassment claims." Campos-Orrego v. Rivera, 175 F.3d 89, 92 (1st Cir.1999) (affirming verdict in favor of plaintiff on other grounds in case with factually similar Law 17 claim). Here, Rivera-Rossy has alleged retaliation because he supported his co-worker by testifying in her sexual harassment case against the PRPD. Though it is a borderline case, the court understands that plaintiff has alleged sufficient facts to state a claim of sexual harassment under Law 17. Therefore, the court **DENIES** defendant's motion to dismiss on this ground.

Defendant further argues that Puerto Rico's sovereign immunity under the Eleventh Amendment bars plaintiff's state law claims. The court **GRANTS** in part and **DENIES** in part defendant's motion to dismiss on this ground. The Eleventh Amendment has been construed to guard a state and "arms of the state" against claims brought in federal court by citizens of that or any other state. Puerto Rico Ports Auth. v. M/V Manhattan Prince, 897 F.2d 1, 9 (1st Cir. 1990). The

**Civil No. 08-2167 (GAG)(CVR)**          10

Eleventh Amendment applies to Puerto Rico "in the same manner, and to the same extent as if Puerto Rico were a state." <u>De Leon Lopez v. Corporacion Insular de Seguros</u>, 931 F.2d 116, 121 (1st Cir. 1991).  States may not be sued in federal court for damages unless the state has waived or Congress has abrogated the state's sovereign immunity.  <u>Puerto Rico Ports Auth.</u>, 897 F.2d at 9.  To the extent that plaintiff seeks monetary damages under Puerto Rico law against the PRPD and its officials in their official capacities, the claims are barred and shall be dismissed.  Plaintiff's individual capacity claims for monetary damages shall not be dismissed.  In addition, Law 17 and Law 69 permit the court to order injunctive relief, including hiring, promoting, or reinstating the employee, and desisting from the unlawful discriminatory acts.  Therefore, plaintiff may continue to press his official-capacity claims for injunctive relief under Law 17 and Law 69 as to the official capacity defendants.  As the court noted earlier, the Commonwealth has Eleventh Amendment Immunity and cannot be sued.

The court shall retain jurisdiction over all of the remaining pendant state claims, as there are still issues of federal law before the court.

**III.     Conclusion**

For the reasons set forth above, this court finds that plaintiff has failed to state a claim with respect to several causes of action set forth in the amended complaint, but has stated other claims that could support judgment in his favor.  Therefore, the motion to dismiss filed by PRPD (Docket No. 16) is **GRANTED** in part:

(1) plaintiff's claims under Section 1983 for damages and declaratory or injunctive relief against the PRPD, as well as all claims for damages against police-defendants in their official capacity, are dismissed with prejudice;

(2) plaintiff's claims under Section 1985(1) are dismissed with prejudice;

(3) plaintiff's claims under Puerto Rico Law 100 are dismissed with prejudice;

(4) plaintiff's claims under Puerto Rico Law 426 are dismissed with prejudice; and

(5) plaintiff's claims under Puerto Rico Laws 17 and 69 for damages against the PRPD and police-defendants in their official capacities are dismissed with prejudice.

The court **DENIES** defendant PRPD's  motion to dismiss (Docket No. 16) in all other

**Civil No. 08-2167 (GAG)(CVR)**                    11

1  respects.

2          **SO ORDERED**.

3          In San Juan, Puerto Rico this 24th day of April, 2009.

4                                                          *S/Gustavo A. Gelpí*
                                                         GUSTAVO A. GELPÍ
5                                                    United States District Judge